ALFRED H. GEORGE *v.* LOUISVILLE & NASHVILLE RAILROAD COMPANY.

[40 South. Rep., 486.]

1. CARRIERS. *Bill of lading. Conditions. Nonacceptance.*

A provision endorsed on a bill of lading to the effect that its surrender should be required before the delivery of the freight at destination, has no application to a shipment in respect to which there was no acceptance of the conditions printed thereon, and the bill itself stipulated that in the absence of such acceptance the freight was to be transported and the carrier be liable as at common law, modified by the laws of the United States and the several states so far as applicable.

2. SAME. *Surrender of bill of lading. Right to require.*

Where freight was shipped for delivery at a port in a city to be loaded on a vessel, the carrier cannot, in the absence of a contract on the subject, demand the surrender of the bill of lading before carrying it to the port, although it has reached the city.

FROM the circuit court of Jackson county.

HON. WILLIAM T. McDONALD, Judge.

George, the appellant, was plaintiff in the court below; the railroad company, the appellee, was defendant there. From a judgment for defendant plaintiff appealed to the supreme court.

The appellant, George, purchased twenty-four car loads of cotton-seed meal to be shipped for export from Americus, Ga., to "Shipside, New Orleans, Louisiana." The railroad company

isued its bills of lading on the dates of purchase, charging a through freight rate agreed upon and specified in said bills of lading covering all charges for transportation from Americus, Ga., to "Shipside, New Orleans, Louisiana," and freight to be collected on delivery at destination. Appellant's vendor drew a draft on him to cover the purchase price of the cotton-seed meal and attached draft to bill of lading. The meal was carried by the Seaboard Air Line Railroad Company from Americus, Ga., to Montgomery, Ala., where it was in turn delivered to the appellee, the Louisville & Nashville Railroad Company, which promptly transported it to New Orleans, La. As soon as the first shipment reached New Orleans, appellant notified the appellee that he desired the meal delivered at Port Chalmette, admitted to be a port of New Orleans and one of the ports at which Shipside deliveries are made; but appellee's agent refused to transmit the meal to said port and refused to deliver the same to the New Orleans Belt & Terminal Railroad Company, running from New Orleans to Port Chalmette, over which railroad it was necessary to be transported in order to be delivered at the port, unless appellant would first pay all freight charges on the shipment and surrender the bills of lading evidencing it. Appellant refused to pay the freight or surrender the bills of lading until the meal reached Port Chalmette, where he desired it delivered for export. A delay of three or four weeks occurred, but finally the meal was delivered to the New Orleans Belt & Terminal Company and transported by that company to Port Chalmette, and the freight charges paid and bills of lading surrendered. During the period of delay the market declined, and the appellants brought suit to recover the difference in the price at the date of the arrival of the meal in New Orleans and at the date of its delivery at Port Chalmette, and to recover unloading charges collected by the appellee, and demurrage charges collected by the appellee, and demurrage charges collected under a rule of the Louisiana Railroad Commission for the delay. The railroad company pleaded the general issue and gave notice that it would

prove that it was its custom to require bills of lading to be surrendered and freight charges paid before goods consigned "Shipside, New Orleans, Louisiana," were placed alongside the ships; that it had no traffic arrangement with the New Orleans Belt & Terminal Company for delivery over its line to Shipside, Port Chalmette; that, as soon as the appellant had surrendered the bills of lading and paid the freight, the goods were delivered to the terminal company; that the rules of said Railroad Commission provided that "cars containing freight for delivery will be placed immediately upon the payment of freight charges or as soon thereafter as the ordinary routine of its work will permit." The court below gave a peremptory instruction for the railroad company.

*Neville & Wilbourne,* for appellants.

Appellee contends that it had a right by custom to demand delivery of the ladings and prepayment of the freight before placing cars Shipside where the ladings read "Order Notify." The evidence wholly fails to show that appellants knew, or had ever been advised, of any such custom. Under all the authorities, a custom in order to be binding must have been known to the parties sought to be bound thereby. 6 Ency. Law and Pro., 428; *Barlaw* v. *Lambert,* 65 Am. Dec., 375.

Appellee's conduct in this case in refusing to deliver the cotton-seed meal to the New Orleans Belt & Terminal Company for transportation to Port Chalmette, unless appellant should first surrender to appellee the bills of lading and pay to appellee the freight charges, was not justified by the facts and the law irrespective of the custom relied on by appellee. Let it be remembered that in every instance the bills of lading specified Shipside delivery; that no demand for prepaying of freight charges was made by the initial carrier or by the appellee until after it had transported the cotton-seed meal as far as New Orleans; that in no view of the case were the freight charges due until the cotton-seed meal had reached its destination and the carrier was ready to deliver the

same at destination; that it is nowhere contended in this record by appellee that it was not its duty to deliver the cotton-seed meal at Port Chalmette as designated by appellant; that it is admitted by appellee that appellant duly and promptly designated Port Chalmette as the place for making Shipside delivery; and that in order to make Shipside delivery at Port Chalmette it was necessary for appellee to deliver the cotton-seed meal in question to the New Orleans Belt & Terminal Company, a railroad admitted by appellee to be a common carrier. Appellee insits that it was ready and willing to make Shipside delivery and to make that Shipside delivery at Port Chalmette, and nowhere denies that under its contract it was its duty to deliver Shipside Port Chalmette whenever the proper person designated Port Chalmette as the point of delivery and surrendered the ladings. Appellee was wholly without warrant in questioning appellant's right to designate the point of delivery, because appellant was the consignee named in the bills of lading, and appellee did not claim to have had any knowledge or notice, or any pretense of a right in any other person to so designate the delivery of the cotton-seed meal in controversy. Appellant unquestionable had the right to designate Port Chalmette as the point where he would have Shipside delivery made. Not only was he the consignee named in the bills of lading, but he was the actual owner of the cotton-seed meal under a distinct and definite contract of purchase, and the fact that the bills of lading for the cotton-seed meal were attached to the seller's draft for the purchase price and deposited in the bank does not at all affect appellant's ownership of the meal or their right to designate the port at which Shipside delivery should be made.

*Gregory L. Smith,* for appellee.

The undisputed facts were that the shippers had taken bills of lading in the name of George, but had never delivered these bills of lading to him, nor had George paid the drafts against these bills of lading. Under these circumstances it is submitted that

the exclusive right to the control of the property was in the holders of the bills of lading, and that appellant had absolutely no legal interest in, or control over, the property.   *Bank of Rochester* v. *Jones,* 4 N. Y., 403; *Haley* v. *Warden,* 25 Kan., 93; *Huyskill* v. *Farmers M. N. Bank,* 87 Pa. St. Rep., 525; *Finn National Bank* v. *Kelly,* 57 N. Y., 37.

The fact that the bills of lading are made out in the name of the consignee gives him no right to the property until he has paid the drafts against them.   *M. C. R. R. Co.* v. *Phillips,* 60 Ill., 192; *Chaffe* v. *Mississippi R. R. Co.,* 59 Miss., 185; *Bonner* v. *Marsh,* 10 Smed. & M., 376.

A consignee against whom drafts are drawn, with bills of lading attached, but who has obtained possession without paying the drafts, has no title and is a mere wrongdoer.   *First National Bank* v. *Crocker,* 111 Mass., 170; *Tilden* v. *Minor, Smith & Moriarty,* 45 Vt., 196.

Even if appellants had obtained the possession of the bills of lading and the right to control the property, they could not have insisted upon appellee's recognizing such right without first producing the bills of lading.   The right of the carrier to have the bills of lading so produced is thoroughly established upon principle and precedent.   *Ratzer* v. *Burlington, etc., R. R. Co.,* 66 N. W. Rep., 988; *Peoria National Bank* v. *Northern R. R. Co.,* 58 N. H., 203.

Nor has the owner of the goods the right to have the destination changed without producing the bills of lading.   *Merchants National Bank* v. *Bangs,* 102 Mass., 291; *Ryan* v. *Great Northern Ry. Co.,* 95 N. W. Rep., 758.

Argued orally by *R. E. Winbourne,* for appellant.

WHITFIELD, C. J., delivered the opinion of the court.

The point on which the propriety of the peremptory instruction must turn, and which point is the chief, if not the only, one much stressed by appellant, is whether the appellee was entitled

to the surrender of the bills of lading properly indorsed before the delivery of the property at Port Chalmette for Shipside delivery. Appellant quotes from the bills of lading the following: "If the word 'order' is written hereon, immediately before or after the name of the party to whose order the property is consigned, without any condition or limitation other than the name of the party to be notified of the arrival of the property, the surrender of this bill of lading properly indorsed shall be required before the delivery of the property at destination." But the bill of lading contains on its face the following other condition: "The shipper may elect to accept the conditions printed or written on the face and back hereof, and the reduced rates applying thereunder, or may, as provided below, require the carriage of the property at carrier's liability. If the shipper elects not to accept the said reduced rates and conditions, his failure to sign the acceptance clause provided below will be accepted as notice of such intention, and the property will be at the carrier's liability, limited only as provided by common law, by the laws of the United States, and of the several states, in so far as they may apply. Property so carried will be charged twenty (20) per cent higher (subject to a minimum increase of one (1) per cent per hundred pounds) than if shipped subject to the conditions printed or written on the back and face thereof."

The evidence shows that this acceptance clause was in no instance signed by the shipper as owner, or agent for the owner, and that neither the consignee, nor any one for him, signed said clause. There is no proof that the shipment was made at a reduced freight rate. The rate charged was the through rate established as per the answer of the appellee to the twentieth interrogatory propounded to it under the statute, and the clause relied on, therefore, as above set out, is no part of the contract in this case. In addition to this, the appellant duly notified the appellee that Port Chalmette was the point of destination, and consequently the appellee had no right to the bills of lading short of that point. "Shipside, New Orleans, Louisiana," was the

point of destination, which means one of the ports· of New Orleans. The evidence shows that Port Chalmette was a port of New Orleans, and the proper place for the delivery, and that appellee was so notified. The appellant certainly had such interest in the goods and ladings as to authorize him to direct at what port he would have delivery made. Exporters who would want to buy the goods would want to buy them in port—not in the yards of the Louisville & Nashville Railroad Company in New Orleans, but in port, where, whenever ships were ready, the goods could be loaded into the ships. Appellee would have been abundantly protected in carrying the cotton-seed meal to Port Chalmette, since no purchaser from the appellant, that having been done, could rightfully have demanded the property being carried to any other port. Appellee should have promptly delivered the property to the connecting carrier, the New Orleans Belt & Terminal Company. Appellant was legally bound to accept and pay for the meal. It was consigned to him, a draft drawn with bills of lading attached, and he had a right to have it carried to its destination, where he could resell, in accordance with commercial usage. Appellee is not in an attitude to insist that appellant had not paid for the stuff, by cashing the drafts drawn on him, at the time he demanded the meal should be sent to Port Chalmette, when no such point was made by appellee below. What appellee demanded then, and insists on now, was and is the actual surrender of the bills of lading before it would let the meal go to Port Chalmette, whether paid for or not.

In addition to all this, it may further be said that there is no evidence of any custom, such as contended for by appellee, ever having been brought home to the knowledge of the appellant. Nor does the evidence disclose any published rule calling the attention of shippers to such custom. George testified that he knew of no such custom, and that he had been in the business of buying and selling cotton-seed meal for twelve or fifteen years, and that prior to the shipment of the meal in controversy, he had handled to Port Chalmette, through the New Orleans Belt & Ter-

minal Company, many car loads of meal, the bills of lading reading "Shipper's order notify" being handled exactly as were the bills of lading in this case, and that during all these years no demand had ever been made on him, by any railroad company in New Orleans, to surrender the bills of lading and pay freight charges before the arrival of the meal, except the demand made in this case by the appellee. He also testified that a part of the meal, purchased about the same time, went straight through over the New Orleans & Northeastern Railroad Company to Port Chalmette without any such demand for the surrender of the bills of lading. The contention of the appellee, therefore, on this point, is manifestly untenable.

In addition to all this, it may finally be observed that appellee admitted that the unloading charge had been collected, and we think the court should have allowed the evidence offered to show that George had prepaid this charge.

*Reversed and remanded.*